## Carman v. Carman

*Mervine, Brown & Newman*, for plaintiffs.

*James R. Marsh*, for defendant.

DAVIS, P. J., December 19, 1963. — John E. Carman, also known as John Edward Carman, died

intestate on December 12, 1959, and letters of administration were awarded to his widow, Sarah M. Carman. On January 26, 1960, decedent's parents, George S. Carman and Mary E. Carman, brought this action of assumpsit against defendant administratrix upon a sealed judgment note for the principal sum of $6,000, with interest, dated October 6, 1952, payable to the order of George S. Carman and Mary E. Carman, and signed by John Edward Carman. Defendant filed an answer: (1) disclaiming knowledge concerning execution or delivery of the note and demanding proof of same at trial; and (2) averring under "New Matter" that the note has been paid in full for the reason that plaintiffs are the beneficiaries in three insurance policies issued on the life of decedent and that, accordingly, plaintiff George S. Carman has received or will receive $500 under a policy issued by the Colonial Life Insurance Company of America, while plaintiff Mary E. Carman has received or will receive $1,500 under a policy issued by the American Automobile Association and $10,000 under a policy of "G. I." insurance. Meanwhile, both plaintiffs died: Mary E. Carman on June 17, 1961, and George S. Carman on June 22, 1961. Letters testamentary in each of these estates were granted to George P. Carman, and he has been substituted as plaintiff in their stead by suggestion duly filed. The case is now brought before the court on plaintiffs' preliminary objections in the nature of a demurrer to defendant's new matter.

The plea of payment is an affirmative defense: Pennsylvania Rule of Civil Procedure 1030. As such, it is a pleading in confession and avoidance which has the effect of admitting execution and delivery of the instrument declared upon and averring, by way of avoidance, that the instrument has been discharged by payment: Hayden v. City of Philadelphia, 81 D. &

C. 204, 205-06 (C. P. No. 5, Philadelphia County, 1952) ; and see: Saxe v. Feinstein, 366 Pa. 473, 77 A. 2d 419 (1951). Payment is a conclusion of law, and facts sufficient to support such a conclusion must be averred in the pleading: Brooks v. Rudolph, 371 Pa. 21, 23 (1952) ; Pa. R. C. P. 1019 (a).

The pivotal question here presented is whether or not defendant's new matter contains sufficient allegations of fact to support a conclusion that the judgment note has been discharged by payment. The allegations do point to a fund out of which the parties conceivably might have provided for the payment of the note: the proceeds, received or to be received by George S. Carman under a $500 policy and by Mary E. Carman under two policies for $10,000 and $1,500. With reference to the payment of negotiable instruments, section 3-603 (2) of the Act of April 6, 1953, P. L. 3, re-enacted by section 3 of the Act of October 2, 1959, P. L. 1023 [Uniform Commercial Code—Commercial Paper], 12A PS §3-603, provides:

"(2) Payment or satisfaction may be made *with the consent of the holder* by any person including a *stranger* to the instrument. . . ." (Italics supplied).

Section 3-116 of the same act, as amended by the Act of October 2, 1959, P. L. 1023, 12 PS §3-116, provides:

"An instrument payable to the order of two or more persons . . .

"(b) if not in the alternative is payable to all of them and may be negotiated, *discharged* or enforced only by all of them". (Italics supplied).

From these statutory provisions, it is apparent that there can be no discharge of this judgment note in the absence of evidence that both plaintiffs consented to application of the insurance proceeds in payment thereof. The bare fact that plaintiffs were, at the same time, both creditors and beneficiaries of the in-

sured is not evidence either that plaintiffs gave such consent or that the insured intended to make such consent a condition prerequisite to the receipt by them of the proceeds of the insurance policies. See Kendrick's Estate, 3 Dist. R. 402, 403 (O. C., Phila. Co., 1894). The general principle has been stated in 46 C. J. S., Insurance, §1162:

". . . although the person named in the policy as beneficiary is also a creditor of insured, he is nevertheless ultimately entitled to both the proceeds of the policy and payment of the debt where it appears that the intention of insured, at the time of taking out the policy, was to make a gift of the proceeds to the beneficiary and not that they should be applied on the debt".

While we have found no Pennsylvania decisions directly in point, the issue was squarely presented in Pherigo v. L. Gutman & Son, 150 Ky. 779, 150 S. W. 1022 (1912). There, H. F. Pherigo, who had conducted a jewelry business, died in April, 1910. L. Gutman & Son, to whom he had given a $1,046.12 note for goods sold and delivered, brought suit for the settlement of his estate. Decedent's mother, Rissie Pherigo, filed a claim against the estate for payment of a $1,000 note dated September 5, 1907, given her by decedent for borrowed money. The commissioner allowed the claim. Gutman & Son filed exceptions thereto on the ground that Rissie Pherigo had received $1,000 under a policy of insurance on decedent's life, but had failed to credit the money on the note. The circuit court sustained the exceptions. On appeal, the court of appeals reversed and remanded the case for judgment in favor of Rissie Pherigo. Hobson, C. J., said:

"His [Pherigo's] wife also testifies that she thought the insuranuce was taken out before the debt to his mother was created. There is no contrary evidence. The insurance having been made before the debt to

his mother was created, it cannot be held, nothing else appearing, that the insurance was to secure the debt. We therefore conclude that the circuit court erred in sustaining the exceptions to the mother's claim on the note": 150 S. W. 1022, 1023.

The necessity for evidence of intention of the parties relative to payment was recognized by our own Supreme Court in Haberfeld v. Mayer, 256 Pa. 151 (1917). In that case, Mayer and Haberfeld had been partners. Mayer owed Haberfeld $1,500 and, while the whole sum was still owing, he took out a policy of insurance on his own life, payable to "his business partner William Haberfeld". The right to change beneficiary was reserved, and all premiums were paid by Mayer. It did not appear that Haberfeld had anything to do with taking out the policy, although he had inquired of the agent concerning making a policy for the protection of loans some time before Mayer applied for the policy in question. Subsequently, Mayer sold all his interest in the partnership to Haberfeld for $900, thereby reducing the $1,500 debt to $600. On the death of Mayer, his executrix notified the insurance company not to pay Haberfeld. The company paid $1,958.92, the proceeds of the $2,000 policy, into court. At trial, the court directed a verdict for Haberfeld for the entire amount. The executrix then moved for a new trial and judgment n. o. v. in her favor for the full amount of the proceeds. The lower court overruled both motions. On appeal, the Supreme Court affirmed per curiam for the reasons given in the opinion of the lower court, where Shafer, P. J., had said, inter alia:

". . . there is no evidence in this case from which it could be found that Mayer took out the policy in question to secure a debt due Haberfeld. Haberfeld is described in the policy as a business partner and not as a creditor and there is no mention of the debt

in the policy, and Mayer had reserved the right to change the beneficiary at his own desire, but he never did so. We are of opinion that Haberfeld would have a right to the proceeds of the policy even if he had not been either a partner or creditor, and the fact that he was either or both could not make the policy less beneficial for him than if he had no such interest at all".

Counsel for defendant seeks to invoke a principle drawn from the law of wills, and cites Dembinski's Estate, 316 Pa. 61 (1934), for the proposition that, where a legacy is equal to or greater than a debt owed by testator to the legatee, a presumption arises that the legacy is given in payment of the debt. Search has revealed only a single Pennsylvania case in which the attempt was made to extend the application of this principle to life insurance benefits: Kendrick's Estate, supra. There, decedent had regular life insurance policies in the aggregate sum of $3,000 and, in addition thereto, held certificates of membership in two organizations, "The American Legion of Honor" and "The Knight Templars' Aid Association", from each of which the beneficiary designated by him would be entitled to receive, upon his death, the sum of $5,000. Decedent had been indebted to his brother since 1882, but the amount increased every year and reached the total of $26,000 at the time of his death. Without his brother's knowledge, he made both certificates payable to the brother, although previously they had been payable to his wife. At the audit of his estate, the judge held that the proceeds were to be applied as payments on account of the indebtedness. Exceptions to this ruling were sustained and an adjudication in favor of his brother for the full amount of the certificates was directed. For this action, Ferguson, J., gave three reasons: (1) there was no evidence that decedent intended the proceeds to be applied to the debt; (2) there was no presumption of

payment, because the amount of the debt exceeded the total proceeds of the certificates; and (3) these associations were not life insurance companies and, under their by-laws, the members had no property interest in the funds which could be considered as assets for the payment of debts of the members.

The principle contended for by defendant is an exception to the general rule that the expressed intention of testator governs the construction of wills. In Lebling's Estate, 42 D. & C. 151 (O. C. Erie Co., 1941), the court required Dr. Boughton to elect between his $14,424.30 claim for professional services rendered to decedent and the bequest to him of five $1,000 bonds, not because of any presumption, but pursuant to the express language of the bequest. Waite, P. J., said:

"It is true as a general rule that when a legacy is provided for in a will, in the absence of any limitation thereof, it is to be considered as a gratuity and not as a payment of a debt of decedent to the legatee, except when the legacy exceeds the amount of the debt. See Dembinski's Estate [316 Pa. 61], supra. But where, as here, the will specifically provides that the bequest is made for services rendered, a different rule applies. The intention of testator is thereby expressd and speaks as of the death of decedent. The intent of testator clearly expressed by the words is, as has been so often stated, the pole star by which courts must be guided in the interpretation of wills. See Hancock's Appeal, 112 Pa. 532".

This exception has been the subject of general criticism, as in the commentary appearing in 47 A. L. R. 2d 1140, 1143:

"According to this doctrine, excluding its refinements and qualifications, a legacy to a creditor of equal or greater value than the debt is presumed to be intended to satisfy the debt. Generally the courts

recognize the existence of this doctrine, but in the next breath they are apt also to observe that the rule is regarded with disfavor, and that slight variations suffice to make it inapplicable. Indeed, this doctrine, at least in the later cases, has shown such debility that it is probably safe to say that no reliance can be placed on it with any degree of prudence".

In Dale v. Dale, 241 Pa. 234 (1913), where a daughter's claim for services rendered to decedent was allowed notwithstanding a legacy to her of testator's homestead, furniture and farm, the doctrine was not even discussed. Both criticism of the doctrine and an indication of its derivation may be found in the early Pennsylvania case of Byrne v. Byrne, 3 S. & R. 52, 60 (1817), where Mr. Justice Yeates said:

"A rule has prevailed that, wherever a person by his will, gives a legacy as great or greater than the debt he owes to the legatee, such legacy shall be a satisfaction of the debt, on the presumption that a man must be intended just, before he is bountiful, and that his intent is to pay a debt and not to give a legacy: 1 Equ. Abr. 203; 2 Salk. 508; 2 Vern. 177, 258, 298. The rule itself is not founded in reason, and often tends to defeat the bounty of testators, and able chancellors have thought it more agreeable to equity to construe a testator to be both just and generous, where the interests of third persons are not affected. And courts of justice will now lay hold of slight circumstances to get rid of the rule".

The rule has been applied directly in but few Pennsylvania cases. In Steelman Estate, 17 D. & C. 2d 46 (O. C. Delaware Co., 1958), the court dismissed the claim of decedent's mother for payment of a $2,000 note, held to be satisfied by a bequest of ". . . everything I have to my wife, Eileen, providing she give my mother, Florence M. Walton, $2500.00 from the Hancock Ins. policy on my life, immediately". In Har-

deman's Estate, 85 Pa. Superior Ct. 313 (1925), the rule was applied to effect satisfaction of a claim for services rendered prior to the execution of the will, but not to preclude the legatee-creditor from recovering for services rendered subsequent thereto. Wesco's Appeal, 52 Pa. 195 (1866), involved the claim of decedent's widow to recover $1,400, which she considered her separate estate, comprised of $516.87 from the estate of her former husband and $1,009.66 from the estate of her father. Both sums had been paid prior to the Act of April 11, 1848, P. L. 536, sec. 6 of which established the rights of married women to their separate property. The Supreme Court held that this money, if taken by the husband (decedent) prior to the act, was his property; that the evidence was insufficient to establish that he had disclaimed conversion of the money to his own use; and that, therefore, there was no debt collectible from decedent's estate. Mr. Justice Read then went on to say, by way of dictum:

"But supposing it to be a debt for which the husband's estate is liable to the widow, it is objected that the testator has satisfied it by a legacy to her exceeding the amount of the debt.

". . . This legacy is not contingent or uncertain, and is payable immediately, so that it fulfills all the requisites which are necessary to make it a satisfaction of the debt. . . ."

On the other hand, the majority of Pennsylvania decisions which refer to this rule find, for one reason or another, that it does not apply to the factual situation there presented: (a) where the claim asserted is greater than the legacy: Dembinski's Estate, supra; Conkle v. Byers' Exr., 282 Pa. 375 (1925); Schoenberg's Estate, 5 Dist. R. 165 (O. C. Phila. Co., 1896); (b) where the claim is on a commercial instrument: Schoenberg's Estate, supra; (c) where the claim is

unliquidated, or a running account: Conkle v. Byers' Exr., supra; Horner v. McGaughy, 62 Pa. 189 (1869); (d) where the amount of the legacy is subject to a contingency, such as a share in the residuary estate: Byrne v. Byrne, 3 S. & R. 52 (1817); (e) where the claim and the legacy are not ejusdem generis: University of Pennsylvania's Trustees v. Coxe, 277 Pa. 512 (1923); cf. Thum's Estate, 5 Dist. R. 739 (O. C. Philadelphia County 1896); Byrne v. Byrne, supra; Geddes Estate, 90 Pa. Superior Ct. 466 (1927); (f) where the assets of the estate are sufficient to pay both debts and legacies: Swint's Estate, 13 D. & C. 433 (1930); and see: Byrne v. Byrne, supra, at pages 54, 61 (1817); cf. Steelman Estate, supra.

Two of the foregoing authorities have a special bearing upon the instant case. In the first of these, Schoenberg's Estate, supra, the court declined to apply the rule of presumptive payment for two reasons: (1) the claim was greater than the legacy; and (2) the claim was on a promissory note. Penrose, J., said:

"It may be added that a presumption of intended satisfaction never arises where the debt is on a commercial instrument, capable of transfer by the legatee to a stranger in the lifetime of the testator (Carr v. Easterbrooke, 3 Vesey 560; Hinchcliffe v. Hinchcliffe, Ib. 516; Strong v. Williams, 12 Mass. 391)".

In harmony, but without discussion of the applicability of the presumptive payment doctrine to negotiable instruments, is Swint's Estate, supra, in which a claim on a $1,000 judgment note payable to the beneficiary of a $2,000 legacy was allowed, although the decision was grounded upon the adequacy of the estate to pay both debts and legacies. Contra is Steelman Estate, supra, in which a claim on a $2,000 promissory note was held to be satisfied by a $2,500 legacy. The decision did not discuss negotiable instruments as such, and contained no reference to the

Uniform Commercial Code—Commercial Paper (section 3-603 of the Act of April 6, 1953, P. L. 3, as re-enacted, 12A PS §3-603), which we have quoted supra.

In the second authority, Byrne v. Byrne, supra, the Supreme Court sustained the joint claims of two sons of decedent for payment of their interest in the estate of their mother, to whom decedent previously had been married, against the contention that these claims were satisfied by one legacy to his son Patrick of $500 together with the cancellation of the son's indebtedness to testator, and by another legacy to his son Henry of a share in the residuary estate. Mr. Justice Yeates said:

"Nor do I deem the cancelling of the debt of $10,778, as equivalent *in all respects*, to a devise of so much money. It was not *ejusdem generis*, with the sum he owed to his two sons *jointly*, when, as it is stated in the case, the two plaintiffs were not *jointly* indebted to him, nor was Henry *separately* indebted to him". (Italics in original.)

Applying the principle to the instant case, it cannot be presumed that John E. Carman intended to satisfy the obligation on the judgment note which he owed to plaintiffs jointly by designating them separately and individually as beneficiaries in the three policies of life insurance alleged in defendant's new matter. The Byrne case is authority for an additional principle; the doctrine of presumptive payment does not apply where the legacy is contingent, as where the legatee is given a share in the residuary estate. Until the debts and legacies have been provided for, it is uncertain what the value of the residuary estate will be, or indeed, if there will be any residuary estate at all. In the present case, defendant has alleged, in the alternative, that plaintiffs "have received, or will receive" the face value of the three policies.

Whether plaintiffs actually will receive the full face value is contingent upon the absence of any loans or other charges which might be deductible by the insurers from the face value.

Although we have discussed several aspects of this case in the light of exceptions to the doctrine of presumptive payment, we are not persuaded that the doctrine itself should be extended to the field of life insurance contracts. The doctrine purports to be in aid of carrying out testamentary intention. Whatever justification there is for the doctrine may be found in the reasonable assumption that one who makes a will does so after giving comprehensive consideration to his assets, his obligations, and the chosen objects of his benevolence. His attention will have been directed to the adequacy of the funds available to satisfy not only his just debts, but the gratuities he desires to give. In contrast thereto, one who applies for a policy of life insurance ordinarily is thinking specifically of the particular beneficiary whom he designates. While some applicants may work out an elaborate insurance plan in lieu of testamentary disposition, this is far from the common practice, and there is no suggestion of it in the instant case. Consequently, there is no basis for a universal presumption that the insured, in giving as much as, or more than, he owed, intended to satisfy his indebtedness to the beneficiaries, thereby enlarging the fund available to other parties having claims upon his financial responsibility or his generosity. In the insurance situation, we cannot properly assume that the insured gave any thought at all, in the absence of some palpable evidence of intention, to these other parties; whereas in the testamentary situation, this is an assumption which fairly might be made. Accordingly, it is our opinion that defendant's new matter fails to set forth an adequate plea of payment and satisfaction for two

768

reasons: (1) there are no averments of fact from which it can be inferred that John E. Carman intended the insurance policies, or the proceeds thereof, to be given in satisfaction of his obligation to plaintiffs on the judgment note declared upon; and (2) there are no averments of fact indicating that plaintiffs consented to receive the insurance policies, or the proceeds thereof, in satisfaction of John E. Carman's obligation to them jointly on the said judgment note.

ORDER

And now, December 19, 1963, defendant is allowed 20 days to file amendment to new matter. In default thereof, preliminary objections in the nature of a demurrer to defendant's new matter are sustained and plaintiff may submit an order for judgment in favor of plaintiff.